**COMMONWEALTH of Pennsylvania,
Appellee**

**v.**

**Donald A. WILLIS, Appellant.**

Superior Court of Pennsylvania.

Submitted July 11, 2011.

Filed Sept. 23, 2011.

Donald A. Willis, appellant, pro se.

David W. Heckler, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER and FITZGERALD *, JJ.

* Former Justice specially assigned to the Superior Court.

OPINION BY BENDER, J.:

Appellant, Donald A. Willis, appeals *pro se* from the November 23, 2010 order denying his petition for post-conviction relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. For the reasons that follow, we vacate that order and remand for further proceedings consistent with this opinion.

Appellant entered a guilty plea on May 27, 2009, to the offenses of homicide by vehicle while driving under the influence (DUI), homicide by vehicle, accident involving death or injury while not properly licensed, and DUI. That same day, he was sentenced to 6 ½ to 13 years' incarceration, followed by a term of 7 years' probation. Appellant did not file a direct appeal.

However, on February 16, 2010, Appellant filed a timely *pro se* PCRA petition alleging, *inter alia,* ineffective assistance of his guilty plea counsel, Ann Faust, Esquire. Ronald H. Elgart, Esquire, was appointed to represent Appellant, yet did not file an amended PCRA petition on Appellant's behalf. Instead, the record indicates that Attorney Elgart submitted a petition to withdraw and "no-merit" letter pursuant to *Commonwealth v. Turner,* 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley,* 379 Pa.Super. 390, 550 A.2d 213 (1988), in which he concluded that each of Appellant's PCRA issues were meritless. Before ruling on Attorney Elgart's petition to withdraw, the court conducted a PCRA hearing on August 9, 2010, at which Attorney Elgart was present as Appellant's counsel.

Then, on November 22, 2010, the court held a second PCRA hearing to address issues raised by Appellant in a *pro se* amended PCRA petition that was filed on July 29, 2010. Once again, prior to the November 22, 2010 hearing, Attorney Elgart submitted a petition to withdraw and *Turner/Finley* no-merit letter, averring that the claims raised in Appellant's *pro se* amended PCRA petition were also meritless. As before, the PCRA court did not rule on Attorney Elgart's petition to withdraw prior to conducting the November 22, 2010 PCRA hearing and, accordingly, Attorney Elgart acted as counsel for Appellant during that proceeding.

On November 23, 2010, the PCRA court issued an order denying Appellant's petition and granting Attorney Elgart permission to withdraw from representing Appellant. At some point on or before December 20, 2010, Appellant sent for filing a timely *pro se* notice of appeal to the Bucks County Clerk of Courts. However, due to alleged defects in that document, the Clerk of Courts did not file and docket Appellant's notice of appeal but, instead, returned it to him on December 20, 2010. On January 18, 2011, Appellant sent a second *pro se* notice of appeal, which the Clerk of Courts deemed acceptable for filing and docketed.

■ Initially, we must address the facial untimeliness of Appellant's January 18, 2011 notice of appeal, as it implicates our jurisdiction to review his claims. *See* Pa. R.A.P. 903(a) (stating that notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken); *see also Krankowski v. O'Neil,* 928 A.2d 284, 285 (Pa.Super.2007) (citation omitted) (declaring that "[b]ecause the timeliness of an appeal implicates our jurisdiction, we cannot address the merits of an appeal ... before determining whether it was timely"). As noted above, Appellant sent a **timely** *pro se* notice of appeal for filing on or before December 20, 2011, but that document was rejected by the Bucks County Clerk of Courts. We conclude, for the reasons stated below, that the Clerk of Courts did not have the authority to decline Appellant's timely *pro se* notice of

appeal and, thus, we have jurisdiction to review Appellant's assertions.

In *Commonwealth v. Alaouie,* 837 A.2d 1190 (Pa.Super.2003), this Court analyzed whether a Prothonotary's office has the power to reject, as defective, a notice of appeal. *Id.* at 1192. In concluding that the Prothonotary's office lacked such authority, we relied on the following language from *Nagy v. Best Home Serv., Inc.,* 829 A.2d 1166 (Pa.Super.2003):

> While the Prothonotary must inspect documents that are sent for filing to ensure they are in proper form, **the power to reject such documents is limited to notifying the proper party that the document is defective so that the defect may be corrected through amendment or addendum.** To hold otherwise would be to confer on the Prothonotary the power to "implement" the Rules governing the form of an appeal and to determine, based upon criteria other than the date they are received, which appeals are timely. Such a power is inconsistent with our [S]upreme [C]ourt's pronouncement that a document is filed when the Prothonotary receives it. Once filed, a notice of appeal is, as with an appeal filed in this court, subject to being stricken or dismissed for failing to cure defects on its face.

*Alaouie,* 837 A.2d at 1192 (emphasis added) (quoting *Nagy,* 829 A.2d at 1170 (citations omitted)). Despite the fact that *Nagy* was a civil case, we found our rationale there equally applicable in *Alaouie,* where the notice of appeal was filed in a criminal case pursuant to Pa.R.Crim.P. 460

(addressing manner of appealing from a summary proceeding).

Likewise, we conclude that the same is true in the instant case—our rationale in *Nagy* is logically applicable to a notice of appeal sent for filing pursuant to Pa. R.A.P. 902 (governing the manner of appealing to this Court from the entry of a final order). Thus, the Bucks County Clerk of Courts should have time-stamped Appellant's timely, albeit defective, *pro se* notice of appeal received on or before December 20, 2010, and then informed Appellant of the errors in that document. In light of this mistake, we will proceed as if Appellant's timely notice of appeal had been properly filed and docketed on December 20, 2010, thereby giving us jurisdiction to entertain his appeal. Nevertheless, we are unable to address the merits of Appellant's claims, as our review of the record reveals several critical errors made by the PCRA court and Appellant's counsel, Attorney Elgart, which compel us to vacate the court's November 23, 2010 order denying Appellant's petition and granting Attorney Elgart leave to withdraw.

 The first and most egregious error evidenced by the record is the fact that Appellant was effectively denied his right to counsel in his first petition for post-conviction relief.[1] *See* Pa.R.Crim.P. 904(C) (stating that "when an unrepresented defendant satisfies to the judge that the defendant is unable to afford or otherwise procure counsel, the judge shall appoint counsel to represent the defendant on the defendant's first petition for post-convic-

---

1. We note that while Appellant attempts to challenge Attorney Elgart's effectiveness in his brief to this Court, he does not expressly argue that he was wholly denied his right to counsel. This omission is irrelevant, however, in light of our holding in *Commonwealth v. Stossel,* 17 A.3d 1286 (Pa.Super.2011), which

states that "where an indigent, first-time PCRA petitioner was denied his right to counsel—or failed to properly waive that right— this Court is required to raise this error *sua sponte* and remand for the PCRA court to correct that mistake." *Id.* at 1290.

tion relief"). Both Attorney Elgart and the PCRA court are responsible for this misstep.

First, Attorney Elgart violated his duty to continue to represent Appellant until the court ruled on his petitions to withdraw. In *Commonwealth v. White*, 871 A.2d 1291 (Pa.Super.2005), we stated that "once counsel has entered an appearance on a defendant's behalf he is obligated to continue representation until the case is concluded or he is granted leave by the court to withdraw his appearance." *Id.* at 1294 (citations omitted). Instantly, Attorney Elgart petitioned to withdraw prior to each of Appellant's PCRA hearings, yet the court chose not to rule on Attorney Elgart's petitions before conducting those proceedings. Consequently, Attorney Elgart was duty-bound to act as Appellant's counsel; however, the transcripts of the PCRA hearings are replete with evidence that he was not advocating on Appellant's behalf. Instead, it appears that he was attempting to prove that Appellant's claims were meritless, presumably to persuade the court to grant his request to withdraw.

For instance, during his direct examination of Appellant at the August 9, 2010 proceeding, Attorney Elgart's questioning was more in-line with a cross-examination than an attempt to draw out any merit in his client's contentions. The following portions of the transcript demonstrate this point:

> [Attorney Elgart]: And sir, you're aware that I have filed what's known as a no-merit letter in regards to the issues you raised in your initial petition, correct?
>
> [Appellant]: Yes, sir.
>
> [Attorney Elgart]: Now, sir, can you explain why you believe the [c]ourt was not allowed to impose the sentence it did?

> [Appellant]: On count number 2 of homicide by vehicle, the Commonwealth of Pennsylvania requires a cause of death. I was never found guilty of a cause of death, which would make that charge vacate.
>
> [Attorney Elgart]: Sir, you're aware there is no separate charge called "cause of death?"
>
> [Appellant]: No, there isn't, but there is no charge that is initially in the law books that states that it is a cause of death, but there are charges which do cause death.
>
> [Attorney Elgart]: That involve a cause of death, correct?
>
> [Appellant]: Yes.
>
> [Attorney Elgart]: What specifically, sir, is your complaint, as this case concluded with a plea of guilty?
>
> [Appellant]: Well, when I pled guilty to these charges I had went with involuntary manslaughter, reckless endangerment of a person, reckless driving, and disregarding traffic lanes were all no pros [*sic*], which would give them cause of death to make homicide by vehicle—
>
> [Attorney Elgart]: Sir, you're aware all these charges were *nolle prossed* as part of the plea bargain involving in your entering a plea of guilty to the charges?
>
> [Appellant]: And that's the reason I pled guilty....

N.T. PCRA Hearing, 8/9/10, at 9–11. Moreover, later in the proceeding, Attorney Elgart stated the following to Appellant:

> [Attorney Elgart]: Sir, let me explain something, and it's simply this: This is your evidentiary hearing. **This is where you have to establish your is-**

**sues and the evidence to support those issues.** This is it.

*Id.* at 16–17 (emphasis added).

Additionally, we note that at the August 9, 2010 hearing, Attorney Elgart did not call Appellant's plea counsel, Attorney Faust, to the stand, despite the fact Appellant was challenging her effectiveness and she was present in the courtroom to testify. *Id.* at 22. Even more disconcerting is the fact that when the Commonwealth called Attorney Faust as a witness and completed its direct examination, Attorney Elgart declined the opportunity to cross-examine Attorney Faust, stating that he had no questions for her. *Id.* at 29.

Similarly, the transcript of the November 22, 2010 PCRA hearing supports our conclusion that Attorney Elgart violated his obligation to represent Appellant. During that proceeding, Appellant claimed that he was on medication at the time he entered his plea, which inhibited his ability to understand what was taking place during the guilty plea proceeding. Appellant once again challenged Attorney Faust's effectiveness as plea counsel, averring that she did not follow up on his claims that he pled guilty due to threats he and his family were receiving. He also averred that Attorney Faust ineffectively made decisions in his case without discussing those choices with him.

Once again, despite Appellant's allegations of Attorney Faust's inadequate representation, Attorney Elgart chose not to call Attorney Faust as a witness during the PCRA proceeding. N.T. PCRA Hearing, 11/22/10, at 24. Moreover, when the Commonwealth called Attorney Faust to the stand, Attorney Elgart's cross-examination consisted of the following, in relevant part:

[Attorney Elgart]: [Attorney] Faust, we touched on it briefly at the last PCRA evidentiary hearing, but again it's been reiterated today that [Appellant's] medical condition, the fact he was on medication affected his ability to understand what was going on in the courtroom. Again, did [Appellant] have any problems understanding what you were telling him?

[Attorney Faust]: I have no recollection of him even telling me he was on medication. There was nothing about my encounters with him that would have raised that as a red flag.... And I certainly didn't' believe that he was in any way impaired during this—during the time leading up to and during the plea.

[Attorney Elgart]: And just to make it clear, after he talked to you about these threats with his wife, you continued to do an investigation of the case?

[Attorney Faust]: Yes.

[Attorney Elgart]: And after he initially brought that up to you, did he ever bring it up to you again?

[Attorney Faust]: No....

[Attorney Elgart]: Can you state whether or not you made any decisions on [Appellant's] behalf without consulting with him or without his knowledge?

[Attorney Faust]: Absolutely not.

[Attorney Elgart]: I have nothing further.

*Id.* at 30–32.

We conclude that the above-quoted portions of the PCRA hearings reveal that Attorney Elgart was not advocating on Appellant's behalf but, instead, was attempting to prove to the court that Appellant's claims were meritless in order to encourage the court to grant his pending petitions to withdraw. Accordingly, Appellant was effectively denied his right to counsel in his first PCRA petition and, consequently, the court's November 23, 2010 order denying Appellant's PCRA pe-

tition cannot stand. *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 699 (1998) (stating that "[t]he denial of PCRA relief cannot stand unless the petitioner was afforded the assistance of counsel").[2]

Before leaving this issue, however, we note that the PCRA court is also at fault for denying Appellant his right to counsel. First, the court failed to reprimand Attorney Elgart, or appoint new counsel, when it became clear that Attorney Elgart was not advocating on Appellant's behalf. Furthermore, we note our displeasure with the PCRA court's act of conducting Appellant's PCRA hearings *prior to* ruling on Attorney Elgart's petitions to withdraw. This decision essentially pitted Attorney Elgart and Appellant against one another, as evidenced by the fact that Attorney Elgart advocated against Appellant's interests at both hearings.

■ Moreover, their contentious relationship was also on display at the November 22, 2010 PCRA hearing when

Appellant orally moved "for a change of appointed counsel," claiming that he and Attorney Elgart had irreconcilable differences. N.T. PCRA Hearing, 11/22/10, at 3.[3] Had the court simply ruled on Attorney Elgart's petitions prior to conducting the PCRA hearings, then one of two outcomes would have resulted: (1) Attorney Elgart would have been permitted to withdraw, requiring Appellant to either proceed *pro se* or retain private counsel, or (2) Attorney Elgart would not have been allowed to withdraw and, presumably, he would have represented Appellant's interests at the PCRA hearings, and not advocated for the court to grant him leave to withdraw. Either of these scenarios would have been preferable to the antagonistic relationship that resulted between Appellant and Attorney Elgart under the present circumstances. Therefore, we suggest that in the future, the PCRA court dispose of petitions to withdraw before conducting hearings on the merits of PCRA hearings.

**2.** Interestingly, *Albrecht* was a death penalty case that also arose out of Bucks County and involved questions of Attorney Elgart's effectiveness as counsel. There, Attorney Elgart was appointed to represent Albrecht on appeal from the denial of his PCRA petition. *Id.* at 698. Albrecht's prior PCRA counsel David Shenkle, Esquire, had raised 72 claims of error before the PCRA court. *Id.* However, on appeal, Attorney Elgart expressly waived all but three of those issues, prompting our Supreme Court to conclude that "[t]he facts of this case raise serious concerns about Attorney Elgart's compliance with the obligations of his appointment by the PCRA court." *Id.* at 699. The Court further stated:

> [Attorney] Shenkle, Appellant's first court-appointed counsel, evidently found some basis in the record to raise dozens of claims of error, yet his successor discarded all but three. Of those three claims, one was thoroughly litigated by his predecessor and had already been decided by the PCRA court. A second was patently frivolous, and the third raised an argument that this [C]ourt has

consistently rejected, and which was already decided in [Albrecht's] direct appeal. Still more troubling is the abbreviated and perfunctory manner in which [Attorney] Elgart briefed these issues and his cursory explanation of the decision to relieve the court of the burden of deciding the remaining issues raised by [Attorney] Shenkle.

*Id.* at 699. In light of the "serious concerns" regarding Attorney Elgart's representation raised in *Albrecht*, and the errors committed by him in the present case, we suggest that the Bucks County trial courts proceed with extreme caution if they choose to continue to appoint Attorney Elgart to represent indigent defendants.

**3.** In response, Attorney Elgart reiterated that he had filed a *Turner/Finley* no-merit letter as he believed all of Appellant's claims were meritless. *Id.* at 3–4. The court then denied Appellant's motion after Attorney Elgart assured the court that he could "elicit from [Appellant] information that he believes is relevant for these proceedings and for [the court's] consideration." *Id.* at 4.

In sum, the fact that Appellant was effectively denied his right to counsel in his first PCRA petition requires us to vacate the court's November 23, 2010 order denying his petition. Additionally, we must note two other errors that occurred in the disposition of this case that support our vacation of that order.

■ First, the PCRA court permitted hybrid representation of Appellant. Despite the fact that Appellant was represented by Attorney Elgart, the court accepted Appellant's *pro se* amended PCRA petition, and considered the merits thereof at the November 22, 2010 hearing. Recently, in *Commonwealth v. Jette*, 23 A.3d 1032 (Pa.2011), our Supreme Court reiterated its "long-standing policy that precludes hybrid representation." *Id.* at 1036. While *Jette* involved a counseled appellant attempting to proceed *pro se* on appeal, our Supreme Court has also declared that "there is no constitutional right to hybrid representation ... at trial," *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137, 1139 (1993), or during PCRA proceedings. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 302 (1999) (applying the *Ellis* rationale prohibiting hybrid representation to PCRA proceedings, stating "[w]e will not require courts considering PCRA petitions to struggle through the *pro se* filings of defendants when qualified counsel represents those defendants"). Accordingly, the court erred in permitting such dual representation during the disposition of Appellant's PCRA petition.

■ Lastly, the court's November 23, 2010 order granted Attorney Elgart's petitions to withdraw despite the fact that those motions and his *Turner/Finley* no-

merit letters were never actually filed. In *Commonwealth v. Karanicolas*, 836 A.2d 940 (Pa.Super.2003), we made it clear that "[b]efore an attorney can be permitted to withdraw from representing a petitioner under the PCRA, Pennsylvania law **requires counsel to file** and obtain approval of a 'no-merit' letter pursuant to the mandates of *Turner/Finley*." *Id.* at 947 (citation omitted; emphasis added). In this case, the docket does not include the filings of either of Attorney Elgart's petitions to withdraw or no-merit letters, and those documents are not included in the certified record. Consequently, we consider those petitions as non-existent and conclude that the PCRA court had no authority to grant Attorney Elgart leave to withdraw. *See Commonwealth v. Kennedy*, 868 A.2d 582, 593 (Pa.Super.2005) (stating that "[a]ny document which is not part of the official certified record is considered to be non-existent").

Therefore, for the various reasons stated *supra*, we vacate the court's November 23, 2010 order and remand for the court to conduct a new PCRA hearing. Prior to that proceeding, we direct the court to appoint new PCRA counsel, as the record makes clear that Attorney Elgart was unwilling to represent Appellant despite his obligation to do so.[4]

Order vacated. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judge FITZGERALD files a concurring opinion.

## CONCURRING OPINION BY FITZGERALD, J.:

I concur only in the result of vacating the order. Initially, I agree with the ma-

---

4. Appellant filed with this Court a *pro se* "Petition for Remand Back to Bucks County Court." As our disposition of this case results in the relief sought by Appellant—*i.e.* remand—we deny that petition.

jority that the appeal is timely. I also agree that the certified record and docket do not indicate Appellant's counsel filed any petition to withdraw.[1] Thus, the PCRA court's order granting a nonexistent petition to withdraw is improper. *Cf. Commonwealth v. Jackson*, 965 A.2d 280, 281 (Pa.Super.2009) (holding "PCRA court erred when it dismissed appointed counsel *sua sponte* after the evidentiary hearing"). Although the majority offers compelling rationales for its disposition, I view the procedural posture differently and would remand for further proceedings, as set forth below.

I suggest the instant procedural posture is almost identical to that in *Commonwealth v. White*, 871 A.2d 1291 (Pa.Super.2005). In *White*, the defendant privately retained counsel, who filed a first PCRA petition on his behalf. *Id.* at 1292–93. After the PCRA court denied relief, the defendant filed a *pro se* notice of appeal. *Id.* at 1293. The record did not reflect counsel's withdrawal of appearance, but did reflect the defendant's request for appellate counsel and *in forma pauperis* status. *Id.* The defendant's counsel neither filed a notice of appeal nor an appearance before this Court. *Id.*

In resolving this procedural quirk, the *White* Court expounded:

> The Pennsylvania Rules of Criminal Procedure and our caselaw make clear that an indigent petitioner is entitled to representation by counsel for a first petition filed under the PCRA. This right to representation exists throughout the post-conviction proceedings, including any appeal from disposition of the petition for post-conviction relief. It is equally clear that once

counsel has entered an appearance on a defendant's behalf he is obligated to continue representation until the case is concluded or he is granted leave by the court to withdraw his appearance.

*Commonwealth v. Quail*, 729 A.2d 571, 573 (Pa.Super.1999). As stated by the Honorable Justin M. Johnson in the recent case of *Commonwealth v. Evans*, 866 A.2d 442, 2005 Pa.Super. [PA Super] 9 , Rule 904, formerly Pa.R.Crim.P. 1504, makes the appointment of counsel mandatory in cases in which a defendant has filed a PCRA petition for the first time and is unable to afford counsel or otherwise procure counsel. Unless a record is made which contradicts the averments of [the defendant's] verified request for the appointment of counsel, he is entitled to representation in this appeal. Inasmuch as [the defendant] has not been afforded counsel, and no reason appears of record to justify the denial of appointed counsel, we are obligated to remand the present case back to the PCRA court so that [the defendant] can have the benefit of a counseled appeal. Upon remand the PCRA court may either direct [the defendant's] PCRA counsel to resume his stewardship of [the defendant's] appeal[5] or new counsel may be appointed should [the defendant] be *adjudged indigent.*

---

[5] It seems unlikely that [defendant's PCRA counsel] can resume representation of [the defendant] in light of the accusations of ineffectiveness argued by [the defendant] in his *pro se* appellate brief, however, this is an issue to be resolved by the PCRA court.

*Id.* at 1293–94 (punctuation and most citations omitted). The *White* Court ultimately "remanded for provision of counsel and

---

1. The certified record includes a document that was neither served on nor filed by the parties. *See generally* Pa.R.Crim.P. 113 (stating criminal case file shall contain all papers filed in case). This document is an internal memorandum discussing the merits of Appellant's PCRA petition and addressed to the PCRA judge.

filing of an appellate brief" within ninety days. *Id.* at 1295. The *White* Court relied, in part, on this Court's reasoning in *Quail.*

In *Quail,* the PCRA court appointed counsel to represent defendant for his first PCRA petition. *Quail,* 729 A.2d at 572. After a hearing, the PCRA court denied the defendant's petition. *Id.* The defendant filed a *pro se* notice of appeal. *Id.* The defendant's counsel "neither entered an appearance on [the defendant's] behalf in this [C]ourt nor was counsel granted leave to withdraw his representation." *Id.* at 573. The *Quail* Court noted:

> Inasmuch as appellant has not been afforded counsel in the present appeal yet is entitled to representation we are obligated to remand the present case back to the PCRA court so that appellant can have the benefit of a counseled appeal. Upon remand the PCRA court may either direct [the defendant's] PCRA counsel to resume his stewardship of [the defendant's] appeal or new counsel may be appointed.
>
> In the future, when presented with a scenario where an indigent petitioner files a *pro se* appeal from a first PCRA petition, the PCRA court should take one of two actions: the PCRA court should either promptly notify counsel of record that his client has taken an appeal and that counsel remains obligated to represent him [2], or the PCRA court should appoint new counsel to represent the appellant on appeal. This action would alleviate the need of this court to remand cases back to the PCRA court and would further expedite the appeals process.

[2] Should the PCRA court choose this approach counsel of record would have essentially three options. Counsel could resume his representation and file an advocate's brief in appellant's behalf, counsel could resume his representation and file a *Turner/Finley* brief in this court or counsel could petition the PCRA court for leave to withdraw prior to the filing of a brief with this court.

*Quail,* 729 A.2d at 573 (footnote omitted).

Because the certified record did not reflect a petition to withdraw, the instant PCRA court "erred when it dismissed appointed counsel *sua sponte* after the [PCRA] evidentiary hearing." *See Jackson,* 965 A.2d at 281. Appellant was therefore represented by PCRA counsel when he filed a *pro se* notice of appeal, similar to the defendants in *White* and *Quail. See White,* 871 A.2d at 1293–94; *Quail,* 729 A.2d at 573. Appellant's counsel, similar to the counsel in *White* and *Quail,* neither filed an appearance nor a petition to withdraw from representation with this Court. *See White,* 871 A.2d at 1293–94; *Quail,* 729 A.2d at 573. Akin to the defendant in *White,* Appellant also claims his PCRA counsel was ineffective. *See White,* 871 A.2d at 1294 n. 5.

I would, similar to our reasoning in *Quail* and *White,* remand for the PCRA court to either order Appellant's PCRA counsel to represent Appellant on appeal or appoint new appellate counsel. *See White,* 871 A.2d at 1293–94; *Quail,* 729 A.2d at 573.[2] I would also order the PCRA court to ascertain whether Appellant wished to proceed *pro se. See Commonwealth v. Powell,* 787 A.2d 1017, 1021 (Pa.Super.2001) (limiting scope of Pa. R.Crim.P. 121(A) in PCRA proceedings); *cf.* Pa.R.Crim.P. 121(A)(1)-(2). I suggest a Pa.R.A.P. 1925(b) statement may be filed *nunc pro tunc. See Jackson,* 965 A.2d at 284. Because of the procedural errors

**2.** Similar to *White,* because Appellant claimed his PCRA counsel was ineffective in his *pro se* appellate brief, it seems unlikely that PCRA

counsel can resume his representation to Appellant. *Cf. White,* 871 A.2d at 1294 n. 5. I would, however, defer to the PCRA court.

implicating Appellant's right to appellate counsel, I believe it is premature to remand for a new PCRA hearing with new PCRA counsel. Accordingly, I concur only in the result of vacating the order below, as I would remand to ensure Appellant has appellate counsel for this appeal or competently waived his right to appellate counsel.